UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ARTHUR DAVID LAROSE, | Case No. 22-CV-1603 (PJS/LIB) |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as Secretary of the Interior; MINNESOTA CHIPPEWA TRIBE; CATHERINE CHAVERS, in her official capacity as President of the Minnesota Chippewa Tribe; GARY FRAZER, in his official capacity as Executive Director Minnesota Chippewa Tribe and as Tribal Election Court Clerk; THE MINNESOTA CHIPPEWA TRIBE TRIBAL ELECTION COURT OF APPEALS in their official capacities as 2022 certification panel, | ORDER |
| Defendants. | |

Frank Bibeau, for plaintiff.

Philip M. Brodeen and Greg S. Paulson, BRODEEN & PAULSON PLLP, for defendants Minnesota Chippewa Tribe, Catherine Chavers, Gary Frazer, and the Minnesota Chippewa Tribe Tribal Election Court of Appeals.

Christopher C. Hair, UNITED STATES DEPARTMENT OF JUSTICE, for defendants United States Department of the Interior and Deb Haaland.

Plaintiff Arthur David LaRose, an enrolled member of the Leech Lake Band of the Minnesota Chippewa Tribe ("MCT" or "Tribe"), served as Secretary-Treasurer of

the Leech Lake Band's Reservation Business Committee ("LLRBC"). LaRose intended to seek reelection in the 2022 MCT election. In February 2022, however, the MCT Election Court of Appeals ("Election Court") found that LaRose was ineligible to run for tribal office under the MCT Constitution and the MCT Uniform Election Ordinance ("Election Ordinance") because he had previously been convicted of a felony.

After unsuccessfully challenging the Election Court's decision before tribal authorities, LaRose filed this action. LaRose argues that the Election Court's decision was based on an invalid amendment to the tribal constitution and an unlawful application of that amendment to his candidacy. The matter is now before the Court on defendants' motions to dismiss.

## I. BACKGROUND

### A. 2005 Secretarial Election and 2006 Constitutional Amendment

The MCT is a federally recognized Indian tribe organized pursuant to the Indian Reorganization Act ("IRA"). Under the IRA, a tribe may call upon the Bureau of Indian Affairs ("BIA") to conduct a "Secretarial election" to allow tribal members to vote on whether to amend the tribal constitution. *See* 25 U.S.C. § 5123; *Wadena v. Midwest Reg'l*

*Dir.*, 47 IBIA 21, 21 n.1 (2008).[1]  (The elections are called "Secretarial" because the BIA acts pursuant to authority delegated by the Secretary of the Interior.)

In 2005, the MCT Tribal Executive Committee ("Executive Committee") asked the BIA to conduct a Secretarial election on a proposal to amend the MCT Constitution to (among other things) prohibit persons who had been convicted of felonies from holding tribal office.  *Wadena*, 47 IBIA at 22.  When the Executive Committee sent its request to the BIA, it also asked the BIA to waive certain federal regulations that typically apply to Secretarial elections.  The BIA approved the requested waivers, and that made it easier for eligible tribal members to register to vote.  *Id.* at 22–23.

The election was held on November 22, 2005, and the constitutional amendment prohibiting convicted felons from holding office was approved.  The election results were certified and posted the following day.  Several days later, the BIA received election challenges from three tribal members (none of whom is a party to this case).  *Id.* at 24–25.

One of the problems alleged by the challengers was that an insufficient number of ballots had been cast in the election, violating tribal and federal law (both of which require 30% of the total number of tribal members entitled to vote to cast ballots in an

---

[1] The Court relies on the decision of the Interior Board of Indian Appeals in the *Wadena* case—cited by LaRose in his complaint—in describing some of the background to this case.

election in order for it to be valid). The Midwest Regional Director for the BIA rejected this and the other challenges on January 5, 2006, and the Secretary of the Interior approved the MCT's amended constitution that same day. The challengers then appealed to the Interior Board of Indian Appeals, which affirmed the Regional Director's rejection of each of the challenges. *Id.* 24–26, 33.

Sometime after the amended constitution took effect, the MCT amended its Election Ordinance so that, like the MCT Constitution, it prohibited convicted felons from holding tribal office. ECF No. 3-1 at 30.

## B. *The Present Dispute*

LaRose has been a candidate for LLRBC office in ten elections, and he has been elected six times. Compl. ¶ 8. Most recently, LaRose filed a Notice of Candidacy to run for Secretary-Treasurer of the LLRBC in the 2022 MCT election. In the lead-up to the election, however, one of the candidates running against LaRose filed a challenge to LaRose's candidacy in the MCT Election Court of Appeals. On February 16, 2022, the Election Court disqualified LaRose based on a 1992 criminal conviction, finding that the conviction was for a felony and that, as a result of the conviction, LaRose was prohibited from holding tribal office under the MCT Constitution and the MCT Election Ordinance. *Id.* ¶ 26; ECF No. 3-1 at 30–32.

LaRose first sought relief from the Election Court's decision from the Tribal Executive Committee.  Compl. ¶ 27.  After the Executive Committee declined to intervene, LaRose filed a complaint with the Leech Lake Tribal Court.  *Id.* ¶ 29.  In May 2022, the Leech Lake Tribal Court dismissed LaRose's suit for lack of jurisdiction and denied his subsequent motion for reconsideration.  *Id.* ¶¶ 30–31.  LaRose appealed those decisions to the Leech Lake Tribal Court of Appeals, which denied relief on June 6, 2022.  *Id.* ¶ 33.

LaRose then filed this lawsuit against two groups of defendants:  (1) the United States Department of the Interior and Deb Haaland, acting in her official capacity as Secretary of the Interior ("the federal defendants"); and (2) Catherine Chavers, acting in her official capacity as President of the MCT; Gary Frazer, acting in his official capacity as Executive Director of the MCT and as Tribal Election Court Clerk; the Tribe; and the MCT Election Court of Appeals ("the tribal defendants").

LaRose's complaint sets forth two claims.  He first alleges that defendants violated the IRA and MCT Constitution by certifying the results of the 2005 Secretarial election because the election lacked a "Tribal quorum of 30 percent (%) to amend a Tribal constitution."  *Id.* ¶¶ 36–37.  Second, he alleges that defendants violated the Indian Civil Rights Act ("ICRA") by retroactively applying the 2006 constitutional amendment to LaRose's 1992 conviction and barring him from running for tribal office.

*Id.* ¶¶ 45, 52.  LaRose asks the Court "to *Decertify* the 2005 Secretarial Election and withdraw the 2006 Secretary approval, and . . . to order MCT Defendants' [sic] to cancel the . . . 2022 MCT LLRBC Secretary-Treasurer election and vacate the Decision & Order by the MCT Tribal Election Court of Appeals disqualifying Plaintiff as a certified candidate by the LLRBC . . . and restart the 2022 MCT LLRBC Secretary-Treasurer election with Plaintiff LaRose named on the ballot."  *Id.* ¶¶ 63–64 (emphasis in original).

Defendants have moved to dismiss LaRose's complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.[2]  ECF Nos. 27, 32.

## II.  ANALYSIS

This is a case about a decision made by a *tribal* court about whether a *tribal* member can hold *tribal* office under *tribal* law.  As a general matter, federal courts have no jurisdiction to interfere with such decisions.  *See Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 609 F.3d 927, 943 (8th Cir. 2010) ("Because

---

[2]Shortly after filing his complaint, LaRose moved to "enjoin[] the defendants Minnesota Chippewa Tribe from proceeding with the present 2022 Minnesota Chippewa Tribe (MCT) Tribal Election process and proceedings."  ECF No. 10.  Because the Court grants defendants' motions to dismiss, there is no likelihood that LaRose's claims will be successful.  Moreover, LaRose's motion is now moot because the 2022 MCT election process concluded months ago, and thus there is nothing to enjoin.  LaRose's motion for "Preliminary Injunction, Habeas and Declaratory Relief" is therefore denied.

tribal governance disputes are controlled by tribal law, they fall within the exclusive jurisdiction of tribal institutions . . . ."); *In re Meskwaki Casino Litig.*, 340 F.3d 749, 763 (8th Cir. 2003) (collecting cases). Recognizing this, LaRose has labored to fashion federal causes of action against defendants in order to obtain the relief he seeks. As explained below, he has labored unsuccessfully.

### A. Standard of Review

"A court deciding a motion under Rule 12(b)(1) must distinguish between a facial attack and a factual attack on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quotations omitted). In the former, the court may consider only what is alleged in the complaint, while in the latter, the court may consider matters outside of the pleadings. *See id.* In this case, defendants make a facial attack on jurisdiction so the Court will consider only the complaint and other materials "necessarily embraced by the pleadings and exhibits attached to the complaint." *Id.* (quoting *Cox v. Mortgage Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012)).

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). It is a plaintiff's burden to establish that the Court has subject-matter jurisdiction over his claims. *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 847 (8th Cir. 2017).

Moreover, to survive a motion to dismiss for failure to state a claim, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.  Claims Against Tribal Defendants

The tribal defendants have moved to dismiss LaRose's claims against them for lack of subject-matter jurisdiction and failure to state a claim.[3]  The Court agrees that it lacks jurisdiction, and therefore does not address the substance of LaRose's claims.

### 1.  Availability of Relief

Tribes are quasi-sovereign nations, and thus tribal governments and tribal officials acting in their official capacities are entitled to sovereign immunity unless that immunity is waived by the tribe or Congress.[4]  *See Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014).  In addition, the federal Constitution does not generally operate as a restraint on Indian tribes—which, again, are separate quasi-sovereign entities.  *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978); *see also Talton v. Mayes*, 163 U.S. 376, 384 (1896).

---

[3] In their brief, the tribal defendants also argued for dismissal based on improper service, but they waived that argument during the hearing on these motions.

[4] LaRose's complaint does not explicitly plead a waiver of tribal sovereign immunity, but, as explained below, he alleges that he is entitled to habeas relief under the ICRA.

In 1968, Congress passed the Indian Civil Rights Act, which "impos[es] certain restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment." *Santa Clara Pueblo*, 436 U.S. at 57.  The ICRA contains just one remedial provision, however:  "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."  25 U.S.C. § 1303.  The Supreme Court has confirmed that habeas relief under § 1303 is the *only* remedy available for a violation of the ICRA.  *Santa Clara Pueblo*, 436 U.S. at 67; *see also Nguyen v. Foley*, No. 21-CV-0991 (ECT/TNL), 2021 WL 4993412, at *7 (D. Minn. Oct. 27, 2021) ("The only relief available under the ICRA is a writ of habeas corpus."), *aff'd*, No. 21-3735, 2022 WL 16631180 (8th Cir. Nov. 2, 2022).  And LaRose concedes that whether the Court has jurisdiction over his claims against the tribal defendants depends on whether his action is one for habeas relief under § 1303.[5]

## 2.  § 1303's  Detention Requirement

To invoke a federal court's jurisdiction under § 1303, an individual must be subject to "detention by order of an Indian tribe."  *See* 25 U.S.C. § 1303; *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 887 (2d Cir. 1996) ("'detention' by order of

---

[5]LaRose initially suggested that the Court has jurisdiction over his claims against the tribal defendants because their actions were ultra vires.  After further discussion, however, he agreed that if he cannot succeed against the tribal defendants under the ICRA, he cannot otherwise succeed against them.

an Indian tribe" is a "jurisdictional prerequisite for federal habeas review").[6] Although he is not imprisoned, LaRose contends that he nevertheless satisfies this requirement because "ICRA's 'detention' requirement 'does not necessarily mean that the Plaintiff must show he or she is in actual physical custody.'" Pl. Memo. Opp. Mot. Dismiss at 9 (quoting *Nygaard v. Taylor*, 563 F. Supp. 3d 992, 1012 (D.S.D. 2021)).

The Second, Ninth, and Tenth Circuits are the only appellate courts to have addressed the scope of § 1303's detention requirement in a meaningful way:

In *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2d Cir. 1996), the Second Circuit analyzed the meaning of "detention" as used in § 1303. In *Poodry*, tribal members accused of treason sought relief under the ICRA from tribal-banishment orders. The Second Circuit held that "§ 1303 is no broader than analogous statutory provisions for collateral relief," *id.* at 893, and thus that "one seeking to invoke jurisdiction of a federal court under § 1303 must demonstrate . . . a severe actual or potential restraint on liberty," *see id.* at 880 (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). In the court's view, tribal members seeking relief from banishment orders had "surely identified severe restraints on their liberty":

---

[6]In order to seek relief under the ICRA, LaRose must also have exhausted his tribal remedies. *See Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 28 F.4th 1051, 1060 (10th Cir. 2022); *Jeffredo v. Macarro*, 599 F.3d 913, 918 (9th Cir. 2010). The Court finds that LaRose has satisfied the tribal-exhaustion requirement.

-10-

> [T]he petitioners may be removed from the Tonawanda
> Reservation at any time. . . . [They] have no ability to predict
> if, when, or how their sentences will be executed.  The
> petitioners may currently be able to "come and go" as they
> please, but the banishment orders make clear that at some
> point they may be compelled to "go," and no longer
> welcome to "come."  That is a severe restraint to which the
> members of the Tonawanda Band are not generally subject.

*Id.* at 895.  Accordingly, the court held that the members were entitled to seek habeas relief under the ICRA.

Two years later, the Second Circuit limited *Poodry*'s holding to cases involving permanent banishment.  *Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 714 (2d Cir. 1998).  The court concluded the *Shenandoah* plaintiffs fell outside the scope of § 1303, even though:

> [they] were suspended or terminated from employment
> positions, lost their voices within the [tribal] Nation's
> governing bodies, lost health insurance, were denied
> admittance into the Nation's health center, lost quarterly
> distributions paid to all Nation members, were banned from
> various businesses and recreational facilities . . . , were
> stricken from Nation membership rolls, were prohibited
> from speaking with a few other Nation members, and were
> not sent Nation mailings.

*Id.* (cleaned up).  In the court's view, the fact that the plaintiffs had not been "banished from the Nation, deprived of tribal membership, [or] convicted of any crime," and the fact that no one had attempted to remove them from the reservation, meant that

plaintiffs had "not alleged a 'severe actual or potential restraint on [their] liberty.'" *Id.* (quoting *Poodry*, 85 F.3d at 880).

More recently, the Ninth Circuit discussed the meaning of "detention" for purposes of § 1303 in *Tavares v. Whitehouse*, 851 F.3d 863 (9th Cir. 2017). In that case, petitioners sought habeas relief from exclusion orders which "barred [petitioners] from tribal events, properties, offices, schools, health and wellness facilities, a park, and the casino" and prevented them from running for tribal office. *Id.* at 868. The Ninth Circuit refused to interpret "detention" to encompass these consequences. In the course of its analysis, the Ninth Circuit emphasized the tension between permitting federal remedies against tribes for ICRA violations, on the one hand, and the goal of promoting tribal sovereignty, on the other. *See id.* at 870 (noting that suits against tribes, even to protect the rights of individual tribal members, come "at the expense of tribal sovereignty"). The court concluded:

> A temporary exclusion [from tribal lands] is not tantamount to a detention. . . . [R]ecognizing the temporary exclusion orders at issue here as beyond the scope of "detention" under the ICRA bolsters tribes' sovereign authority to determine the makeup of their communities and best preserves the rule that federal courts should not entangle themselves in such disputes.

*Id.* at 877.

Finally, in a 2018 unpublished decision, the Tenth Circuit followed the lead of the Second and Ninth Circuits to conclude that, even if banishment satisfies § 1303's detention requirement in some cases (an issue the Tenth Circuit explicitly declined to decide), "exclusion from the tribal office, court, and family-services building . . . does not constitute permanent banishment" and is therefore not "detention" within the meaning of the statute. *Oviatt v. Reynolds*, 733 F. App'x 929, 932 (10th Cir. 2018); see also *Chegup*, 28 F.4th at 1066 (describing the *Oviatt* decision and other scope-of-detention cases).

The Eighth Circuit has addressed the scope of § 1303 only once. In *DeMent v. Oglala Sioux Tribal Ct.*, 874 F.2d 510 (8th Cir. 1989), the court considered whether the district court had jurisdiction to hear a non-Indian father's challenge to a tribal court's child-custody order that was in conflict with a California custody decree. The father sought a writ of habeas corpus to regain custody of his children and alleged that the tribal court had violated his right to due process under the ICRA and other federal statutes. Recognizing that "[f]ederal habeas corpus . . . has generally not been available to challenge a state decree on parental rights or child custody," the court nonetheless held that the father was challenging "detention" for purposes of § 1303 because he "allege[d] that the tribal court illegally took 'custody' of the children on the reservation by making them wards of the tribal court and by refusing to enforce the California

-13-

custody decree." *Id.* at 515.  In reaching this conclusion, the court explicitly held that the "children [we]re being detained by the tribe," and that detention brought the case within the scope of § 1303.  *Id.* at 515.

As best as the Court can tell, then, not a single federal court has held that being barred from running for tribal office—in and of itself—constitutes "detention" for purposes of § 1303.  *See also Lewis v. White Mountain Apache Tribe*, No. CV-12-8073-PCT-SRB, 2013 WL 510111, at *6 (D. Ariz. Jan. 24, 2013) ("[T]he refusal to certify Petitioner as a candidate for the Tribal Council election is simply not equivalent to a detention under § 1303.  As precedent demonstrates, a writ of habeas corpus is a measure reserved for only the most severe restraints on individual liberty—restraints that amount to detention."), *report and recommendation adopted*, No. CV12-8073-PCT-SRB, 2013 WL 530551 (D. Ariz. Feb. 12, 2013), *aff'd*, 584 F. App'x 804 (9th Cir. 2014).

LaRose attempts to equate being prohibited from running for tribal office to being altogether banished.  *See* Compl. at 7 ("Plaintiff LaRose's rights to hold office and seek re-election have been effectively, permanently banished by the acts and omissions of Defendants.").  But LaRose's situation is not remotely comparable to the situation of the tribal members in *Poodry*.  Moreover, being prohibited from running for tribal office is a less severe "restraint on liberty" than the consequences experienced by the plaintiffs in *Shenandoah*, *Tavares*, and *Oviatt*, all of whom were found not to be subject to detention

for purposes of § 1303. *See also Jeffredo*, 599 F.3d at 919 (concluding that disenrollment from tribe does not qualify as detention under the ICRA). Finally, LaRose's case bears no resemblance to the unique, inter-jurisdictional custody dispute in *DeMent*.

Like the Ninth Circuit, this Court is keenly aware that every expansion of the ICRA's habeas remedy erodes the sovereignty of Indian tribes. *See Tavares*, 851 F.3d at 870; *Santa Clara Pueblo*, 436 U.S. at 63 (describing the "protect[ion] of tribal sovereignty from undue interference" as one of Congress's main goals in passing the ICRA). This Court will not intrude on the sovereignty of the MCT by interpreting "detention" more broadly than it has ever been interpreted by another federal court.

For these reasons, the Court holds that LaRose is not subject to "detention by order of an Indian tribe," and therefore he cannot seek habeas relief under the ICRA. His claims against the tribal defendants are dismissed for lack of jurisdiction.

### C. Claims Against Federal Defendants

The federal defendants make two arguments in support of their motion to dismiss LaRose's challenge to the 2005 Secretarial election. First, they argue that he does not have standing to pursue his claims. Second, they argue that he failed to exhaust his administrative remedies. The Court will address these arguments in turn.

1.  Standing

Defendants argue that LaRose lacks standing to challenge the certification of the results of the 2005 Secretarial election. In order to establish that he has standing, LaRose must prove that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The last of these elements—redressibility—is fatal to LaRose's attempt to establish standing.

The crux of LaRose's suit against the federal defendants is his claim that the Secretary of the Interior unlawfully certified the results of the 2005 Secretarial election. According to LaRose, if the Secretary had not done so, the 2006 constitutional amendment would never have gone into effect, and LaRose would never have been prevented from running for tribal office. As a remedy, LaRose asks the Court to "*Decertify* the 2005 Secretarial Election and withdraw the 2006 Secretary approval, and order the BIA to discontinue its misapplication of the Indian Reorganization Act." Compl. ¶ 63 (emphasis in original).

What LaRose overlooks, however, is that he is barred from running for tribal office not only by the MCT Constitution, but also by the MCT Election Ordinance. The Election Court explicitly relied on the Election Ordinance in determining that LaRose was not eligible to run in the 2022 MCT election. *See* Compl. at 2; ECF No. 3-1 at 31.

Therefore, even if the Court were to "*Decertify* the 2005 Secretarial Election and withdraw the 2006 Secretary approval," LaRose would still be barred from holding tribal office by the Election Ordinance.  Compl. ¶ 63 (emphasis in original).  LaRose has not challenged the validity of the Election Ordinance nor provided any reason to conclude that, if the Court were to invalidate the 2006 amendment, the MCT would decide to repeal the Election Ordinance.

In short, LaRose's injury (being barred from holding tribal office) would not be redressed by the relief that he seeks (invalidating the 2005 Secretarial election).  LaRose therefore does not have standing to pursue his claims against the federal defendants, and those claims must be dismissed.

2.  Administrative Exhaustion

Even if LaRose had standing to pursue his federal claims, the Court would dismiss those claims because LaRose did not exhaust his administrative remedies.

"[T]he well-established doctrine of administrative exhaustion requires a party to follow prescribed procedures for obtaining administrative remedies before seeking judicial relief."  *Chase v. Andeavor Logistics, L.P.*, 12 F.4th 864, 868 (8th Cir. 2021); *see also Runs After v. United States*, 766 F.2d 347, 351–52 (8th Cir. 1985).  Federal regulations provide that tribal members who registered to vote in a Secretarial election can challenge the result of that election with the BIA immediately after the results of the

election are posted. *See* 25 C.F.R. § 81.43. In fact, several MCT members *did* challenge the results of the 2005 Secretarial election (and lost). *See Wadena*, 47 IBIA 21; Compl. ¶ 18. LaRose admits that he did not participate in that challenge and that he has never filed his own challenge to that election.

According to LaRose, he did not challenge the 2005 Secretarial election because Leech Lake Tribal Court Judge Wahwassuck held in 2006 that LaRose "w[as] not [a] convicted felon[] under Minnesota's criminal law," so LaRose did not believe he was injured by the amendment to the MCT Constitution. Compl. ¶ 21. This makes no sense: Judge Wahwassuck issued his ruling on December 8, 2006, over a year *after* the deadline to challenge the election had passed,[7] and thus his ruling could not possibly have been the cause of LaRose's failure to timely challenge the election.

Even before the amendment was approved, LaRose knew that the proposed amendment at least *threatened* to cause him injury—i.e., that there was a risk that, if the amendment was approved, his prior conviction would bar him from eligibility for tribal office. LaRose had the right to make substantive and procedural challenges to the

---

[7]The current regulation provides that a challenge must be "received by the Chairman of the Secretarial Election Board within 5 days after the Certificate of Results of Election is posted." 25 C.F.R. § 81.43 (2022). At the time of the 2005 Secretarial election, however, challenges had to be filed "within three days following the posting of the results of an election." *See* 25 C.F.R. § 81.22 (2005). The election results were certified on November 23, 2005, so challenges were due by November 29, 2005, pursuant to the federal regulations then in effect. *See Wadena*, 47 IBIA at 25 n.10.

election during the administrative-challenge period. The procedural infirmity on which LaRose now relies—"the use of election waivers to circumvent the MCT Constitutionally required 30% minimum of all MCT members entitled to vote," Pl. Memo. Opp. Mot. Dismiss at 5—was known to LaRose (and everyone else) before the 2005 Secretarial election was even conducted. There was no reason why LaRose could not have raised this challenge to the election at the time, just as the *Wadena* challengers did. 47 IBIA at 25–26.

In sum, LaRose failed to exhaust his administrative remedies, and he has not offered a valid justification for that failure. And thus, even if LaRose had standing, his challenge to the 2005 Secretarial election would have to be dismissed.[8]

---

[8] To the extent that LaRose makes an ultra vires argument against the federal defendants, his argument fails because LaRose has only challenged the Secretary of the Interior's *interpretation* of the law regarding the certification of tribal elections, not her *authority* to certify elections. *See Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 962 (8th Cir. 2014) ("[C]ourts have interpreted the ultra vires exception as sanctioning review in a very narrow situation in which there is a plain violation of an unambiguous and mandatory provision of the statute. Thus review of an agency action allegedly in excess of authority must not simply involve a dispute over statutory interpretation." (cleaned up) (quoting *Nebraska State Legis. Bd., United Transp. Union v. Slater*, 245 F.3d 656, 659–60 (8th Cir. 2001))).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendants' Motions to Dismiss [ECF Nos. 27, 32] are GRANTED and the Complaint [ECF No. 3] is DISMISSED WITH PREJUDICE as to the tribal defendants and WITHOUT PREJUDICE FOR LACK OF JURISDICTION as to the federal defendants.

2. Plaintiff's Motion for Preliminary Injunction [ECF No. 10] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 2, 2023	 s/Patrick J. Schiltz  
	Patrick J. Schiltz, Chief Judge  
	United States District Court